## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | **Chapter 13** |
| | : | |
| **LARRY CHRISTOPHER SPRECHER,** | : | |
| | : | **Bankruptcy No. 22-12228-AMC** |
| **DEBTOR** | : | |
| ——————————————: | | |
| | : | |
| **KATHERINE KIRKLIN,** | : | |
| | : | |
| **PLAINTIFF** | : | |
| | : | **Adv. Proc. No. 23-00098-AMC** |
| **V.** | : | |
| | : | |
| **LARRY CHRISTOPHER SPRECHER,** | : | |
| | : | |
| | : | |
| **DEFENDANT** | : | |
| ——————————————: | | |

Ashely M. Chan, United States Bankruptcy Judge

## OPINION

### I.      INTRODUCTION

In this chapter 13 case, Larry Sprecher ("Debtor") objects to the proof of claim filed by his ex-wife, Katherine Kirklin ("Ms. Kirklin"), which was characterized as a *priority* unsecured claim in the amount of $76,872.11 pursuant to § 507(a)(1) of the Bankruptcy Code, based upon her belief that the claim constituted a domestic support obligation, and countered that Ms. Kirklin's claim only qualifies as a non-priority equitable distribution claim.

Simultaneously, the Debtor moves pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") to dismiss the adversary proceeding commenced by Ms. Kirklin seeking a declaration of nondischargeability for her claim pursuant to § 523(a)(5) as a domestic support obligation and/or § 523(a)(3) as a claim which Debtor did not schedule in time for her to file a

1

proof of claim by the claims bar date. Debtor argues that Ms. Kirklin fails to state a claim for

relief because her claim does not constitute a domestic support obligation, rendering § 523(a)(5)

inapplicable, and because Debtor consented to the Court deeming Ms. Kirklin's proof of claim

timely filed, rendering § 523(a)(3) inapplicable.

Ultimately, as explained below, because Ms. Kirklin's claim stems from an obligation

which more closely resembles an equitable distribution claim than a domestic support obligation

and because the Court effectively extended the deadline for Ms. Kirklin to file a timely proof of

claim entitling her to distribution from the estate, neither § 523(a)(5) nor § 523(a)(3) applies to

her claim. Therefore, the Court will sustain the Debtor's claim objection and dismiss the

adversary proceeding.

## II.      FACTUAL BACKGROUND

On March 4, 2013, the Debtor and Ms. Kirklin were married. Case No. 22-98 ECF 1

("Compl.") ¶ 11; ECF 4 ("Mot. to Dismiss") ¶ 6; Case No. 22-12228 POC 11 ("POC 11") Ex. A

¶ 3; ECF 126 Hrg. Tr., Aug. 26, 2024 ("Tr.") 49:3-5; Hrg. Ex. D-2. During the marriage, Ms.

Kirklin and Debtor purchased real property located at 15531 Bushy Tail Run, Woodbine, MD

("Property") for $730,000 to serve as their marital residence. Tr. 49:21-23 (address of marital

home), 57:23-58:3, Hrg. Ex. D-2. While the parties resided at the Property, they obtained a line

of credit from Tower Federal Credit Union in the amount of $150,000 secured by a mortgage

encumbering the Property ("HELOC"). *See* Hrg. Ex. D-2; Tr. 106:1, 18-19. Debtor used funds

from the HELOC to purchase an investment property ("Investment Property").[1] Tr. 59:9-60:9.

On or around June 21, 2018, Ms. Kirklin and Debtor separated. Compl. ¶ 12; POC 11 Ex.

A ¶ 4. They had no children together. Case No. 23-00098 ECF 4 Mot. to Dismiss Ex. 1; Hrg. Ex.

---

[1] It is disputed, but not material, whether Ms. Kirklin used funds from the HELOC for her business, Potomac Medi Spa, LLC. Tr. 59:9-60:9, 106:22-107:5.

D-2 at 1; Tr. 103:16-18. On the same day, they entered into a Marital Settlement Agreement

("Divorce Agreement") which served to "settle all questions relating to their property rights, the

maintenance and support of each of the Parties by the other…" Hrg. Ex. D-2 at 1. Pursuant to the

Divorce Agreement, the Property was to be listed for sale no later than July 1, 2018, and in the

event that proceeds from the sale were insufficient to satisfy the liens against the Property, each

party would be responsible for 50% of such deficiency and/or balance due. Hrg. Ex. D-2 at 2-3.

Pending sale of the Property, the Divorce Agreement provided that:

> Wife may continue to reside in the [Property] until August 15, 2018, but
> thereafter, she must vacate the [Property]. Until August 15, 2018, or the
> date of settlement on the sale of the [Property] (whichever occurs first)
> Wife shall be responsible for all expenses thereof, except $3,000 toward
> the mortgage, including but not limited to the HELOC payments, water
> and utility bills, real property taxes, telephone bills, insurance premiums
> on the [Property] and contents, and the cost of pest control. Wife's
> obligations shall be without claim of contribution from Husband. After
> August 15, 2018, and through the date of settlement on the sale of the
> [Property], Husband shall take over all payments, except, Wife shall
> continue to pay a minimum of $1,400.00 toward the home equity line of
> credit (HELOC). The parties shall divide equally (50/50) the cost of any
> repairs which are recommended by the realtor for the sale of the
> [Property].

*Id.* at 2.

The Divorce Agreement further stated with regard to the sale of the Property that:

> [u]pon the settlement of the sale of the [Property], the net proceeds of sale
> shall be divided equally (50/50) between the parties, including any refund
> to the parties from the mortgage escrow account. The net proceeds of sale
> shall mean such sum as remains after deducting from the gross sales price
> (a) Husband receiving the first $26,520.41 off of the top as a
> reimbursement for his retirement loan that the parties used toward the
> down payment for the marital home; (b) broker's commission, and/or
> attorney's fees incurred in connection with the sale; (c) all expenses of
> sale and closing costs; (d) the principal, accrued interest and any
> prepayment penalty due on the mortgage and the HELOC; and (e) the
> outstanding balance with consideration of interest upon the loan between
> the parties and Richard and Jean Kirklin. If the proceeds from the
> [Property] do not satisfy either the mortgage or the home equity line of

> credit deficit or both deficit or a portion of either deficit, each party shall be responsible and liable for fifty percent (50%) of such deficiency and/or balance due. If the proceeds from the sale of the [Property] do not satisfy the loan to Richard and Jean Kirklin than [sic] Wife shall be solely liable for any outstanding balance less than $39,863.35. If there is a balance upon the loan to Richard and Jean Kirklin greater than $39,863.35 than [sic] the parties shall be equally liable (50/50) for the deficit above $39,863.35 up to a maximum of $65,000.

*Id.* at 2-3.

The Divorce Agreement further provided Debtor would pay Ms. Kirklin $39,763.35 within 90 days of the sale of the Property ("Divorce Agreement Obligation"). Compl. ¶ 15; Hrg. Ex. D-2 at 6. Specifically, the section of the Divorce Agreement entitled "Monetary Award" provides that:

> [w]ithin ninety (90) days after the settlement of the sale of the former marital home, [Debtor] shall pay to [Ms. Kirklin] as a monetary award in the amount of Thirty Nine Thousand Seven Hundred Sixty Three Dollars and Thirty Five Center [sic] ($39,763.35). Said payment is meant to reimburse [Ms. Kirklin] for funds that were paid from the home equity line of credit associated with the former marital home. Therefore, said amount will be reduced if the amount owed on the HELOC, as of the date of settlement on the sale of the former marital Home, is less than $247,899.36. For each dollar ($1.00) that the amount owed, as of the date of settlement on the sale of the former marital Home is less than $247,899.36, [Debtor's] monetary award obligation shall be reduced by fifty cents ($0.50), which represents [Ms. Kirklin] getting her fair and equal share. At no point shall [Debtor's] monetary award owed ever be more than $39,763.35. Said monetary award is a one-time, non-modifiable monetary award, except as modifiable downward, as specifically provided for in this section, above.

Hrg. Ex. D-2 at 6.

Pursuant to the Divorce Agreement, Ms. Kirklin would retain her interest in two non-marital retirement accounts and Debtor would "[v]ia a Qualified Domestic Relations Order ('QDRO')" transfer to an account of Ms. Kirklin's choice a flat amount of $74,305.39. *Id.* at 3-4. Furthermore, Debtor waived any interest in Ms. Kirklin's business, Potomac Medi Spa, LLC, and Ms. Kirklin waived any interest in Debtor's business, S&S Real Estate Consultants, LLC. *Id.*

at 5.  Finally, the Divorce Agreement also provided under a section entitled "Alimony" that

"[w]ithin thirty (30) days after the settlement on the sale of the former marital home, Husband

shall pay to Wife a one-time, non-modifiable alimony payment of Fifty Thousand Dollars and

Zero Cents ($50,000.00)" and that:

> [e]xcept for the one-time, non-modifiable Fifty Thousand Dollars and
> Zero Cents ($50,000) alimony payment mentioned in Section, A, Wife
> releases and discharges Husband, absolutely and forever, for the rest of
> her life from any and all claim or right to receive from Husband
> temporary, rehabilitative, definite, or indefinite alimony, support, or
> maintenance for the past, present or future. Wife understands and
> recognizes that, by the execution of this Agreement, she cannot at any
> time in the future make any claim against Husband for alimony, support,
> or maintenance.

*Id.* at 7.

Notably, the Divorce Agreement provides that in the event of any alleged breach of the Divorce

Agreement, the prevailing party shall be awarded any and all costs and expenses, including all

attorneys' fees incurred by that party in prosecution of the alleged breach or in defense against

the alleged breach. *Id.* at 10.

On June 25, 2018, a "Judgment of Absolute Divorce" was entered terminating the

parties' marriage. Compl. Ex. A; Tr. 129:2-6. In 2018, the year the parties separated and

divorced, the Debtor's gross compensation from his employment totaled $409,398.00. Hrg. Ex.

P-11; Tr. 81:3-5. During the parties' marriage, Ms. Kirklin, working as a registered nurse,

received approximately $15-$25/hour and child support from her ex-husband for her two

children from her first marriage in the amount of $5,800/month. Tr. 63:14-18, 123:9-124:3.

Although Ms. Kirklin had moved out of the Property by August 15, 2018, the settlement

date for the sale of the Property occurred on or about February 22, 2019, with the Property

selling for $690,000. Mot. to Dismiss Ex. 2; Tr. 129:11-13; Hrg. Ex. D-13. The sale price did not

5

satisfy all obligations against the Property and the parties were required to bring $15,570.88 to closing. Tr. 55:5-23; Hrg. Ex. D-13.

When the Debtor did not timely pay the Divorce Agreement Obligation, Ms. Kirklin sought to enforce the Divorce Agreement ("Enforcement Action") in the Circuit Court for Howard County, Maryland ("Circuit Court"). *See* Compl. Ex. A. Meanwhile, Debtor filed a complaint against Ms. Kirklin in the Circuit Court for malicious prosecution ("Malicious Prosecution Action"). Compl. ¶ 24; Hrg. Ex. D-4, Ex. P-9. Later, Ms. Kirklin sought attorney's fees based on bad faith in the Malicious Prosecution Action ("Bad Faith Motion"). *See* POC 11 Ex. B.

On September 19, 2021, after a two-day hearing on a "Petition for Contempt of Court and Show Cause Order" before the Circuit Court in the Enforcement Action, the Circuit Court entered an order finding Debtor "to be in willful contempt of Court for violation of the Judgment of Absolute Divorce entered June 25, 2018, for his failure to pay to…Katherine Kirklin, the monetary award of Thirty Nine Thousand Seven Hundred Sixty Three Dollars and Thirty Five Cents ($39,763.35) and for his failure in signing the proposed QDRO in a timely manner…" ("Contempt Order"). POC 11 Ex. A. The Contempt Order further provided that "said [Debtor] may purge himself of the aforesaid contempt by paying the [Divorce Agreement Obligation] within sixty (60) days of entry of this Order for Contempt; further provided, that if it is not paid within the 60 days, it shall be reduced to a judgment…" *Id.* Finally, the Contempt Order directed Debtor to pay to Ms. Kirklin $3,500 for attorneys' fees within 60 days of the entry of the Contempt Order ("Attorney Fee Award"). *Id.* On November 21, 2021, the Divorce Agreement Obligation and Attorney Fee Award were reduced to judgment ("Kirklin Judgment"). Hrg. Ex. P-5.

On April 10, 2022, Debtor emailed bankruptcy counsel he had retained, Anthony Frigo, Esq. ("Attorney Frigo"), a spreadsheet disclosing all his debts over the past year, including to Ms. Kirklin. Tr. 34:2-10, 40:23-41:4; Hrg. Ex. D-15. In June 2022, Debtor sent an email to Attorney Frigo to inform him of the case numbers for the Enforcement Action and the Malicious Prosecution Action. Hrg. Ex. D-4; Tr. 38:8-16.

On August 25, 2022, the Debtor, unbeknownst to Ms. Kirklin, filed a voluntary petition under chapter 13 of the Bankruptcy Code. Case No. 22-12228 ECF 1; Compl. ¶ 38. Ms. Kirklin was not included on the list of creditors attached to the petition despite Debtor having clearly informed Attorney Frigo of the litigation involving Ms. Kirklin and his obligations to Ms. Kirklin. *See* Case No. 22-12228 ECF 1.

The next day, the Circuit Court, also unaware of the bankruptcy, entered an order ("Malicious Prosecution Order") in the Malicious Prosecution Action dismissing the action with prejudice; granting the Bad Faith Motion and awarding Ms. Kirklin $30,313.63 for all costs and expenses incurred in connection with defending herself in the Malicious Prosecution Action ("Bad Faith Fee Award," collectively with Divorce Agreement Obligation and Attorney Fee Award, "Kirklin Debt"); and directing Debtor to pay the Bad Faith Fee Award within 30 days of the entry of the Malicious Prosecution Order or else judgment would enter against the Debtor with interest accruing upon the judgment. POC 11 Ex. B.

On September 26, 2022, Debtor filed his schedules and statement of financial affairs. Case No. 22-12228 ECF 12. The Debtor's schedules did not identify Ms. Kirklin as a creditor and did not reference any of the Kirklin Debt. *See id*. Debtor's statement of financial affairs did not reference the Malicious Prosecution Action or the Enforcement Action. *See id.* Although Debtor signed the schedules and statement of financial affairs, he did not review the documents

7

closely enough prior to filing them to realize that they did not include any of the Kirklin Debt. Tr. 46:15-47:10.

On September 27, 2022, Debtor sent another email to Attorney Frigo with the case number for the Enforcement Action and details regarding the Kirklin Judgment. Tr. 41:8-42:2; Hrg. Ex. D-15. The same day, the deadline for filing non-governmental proofs of claim was set as November 3, 2022 ("Proof of Claim Bar Date"). Case No. 22-12228 ECF 15. Ms. Kirklin did not receive notice of the Proof of Claim Bar Date. *See* Tr. 69:12-71:18; Hrg. Ex. P-25.

On December 19, 2022, Debtor noticed during the 341 Meeting of Creditors that the schedules and statement of financial affairs did not reference any of the Kirklin Debt. Tr. 44:16-23, 45:19-22; Case No. 22-12228 ECF 20. He immediately told Attorney Frigo, who responded that he would amend the schedules. Tr. 43:6-13, 44:16-24.

On May 16, 2023, an order was entered confirming the Debtor's proposed chapter 13 plan ("Plan"). Case No. 22-12228 ECF 68. The Plan did not include any provision for payment of the Kirklin Debt.

On August 17, 2023, Debtor first learned that Ms. Kirklin had no knowledge of the bankruptcy when he received a notification that Ms. Kirklin had commenced collection action for the Kirklin Debt. Hrg. Ex. P-25; Tr. 68:16-18, 71:16-18. In a letter dated the same day, Attorney Frigo notified Ms. Kirklin's Maryland counsel of the bankruptcy ("Frigo Letter"). Compl. Ex. G; Mot. to Dismiss ¶ 19; Ex. P-25. Ms. Kirklin had no knowledge of Debtor's bankruptcy prior to her Maryland counsel receiving the Frigo Letter. Compl. ¶ 42. On August 31, 2023, Ms. Kirklin filed a motion seeking relief from the automatic stay to validate entry of the Bad Faith Fee Award and to continue collection of the Kirklin Debt ("Kirklin Stay Relief Motion"). Case No. 22-12228 ECF 73.

8

Meanwhile, on October 9, 2023, Ms. Kirklin filed a proof of claim for a priority unsecured claim in the amount of $76,872.11 based on the Kirklin Judgment and Bad Faith Fee Award ("POC 11"), asserting the entirety of the claim constitutes a domestic support obligation under § 507(a)(1). Ms. Kirklin's claim is broken down as follows:

    i.   $39,763.35 – Divorce Agreement Obligation

    ii.   $3,500 – Attorney Fee Award

    iii.   $3,295.13 - interest accrued on Kirklin Judgment

    iv.   $30,313.63 – Bad Faith Fee Award

*See* Case No. 22-12228 ECF 103 Obj. to POC 11 at 5.

On November 13, 2023, Debtor and Ms. Kirklin filed a joint stipulation ("Stipulation") providing that "Kirklin shall be permitted to have POC 11 deemed timely filed." Case No. 22-12228 ECF 91. On November 14, 2023, the Court held a hearing on the Kirklin Stay Relief Motion ("Stay Relief Hearing"). *Id.* at ECF 92. At the Stay Relief Hearing, the Court indicated that, while the Kirklin Stay Relief Motion would be denied, "[Ms. Kirklin's] got a proof of claim, and as long as the proof of claim has the full amount there, I'm not really sure why I would disturb that – that proof of claim at all." *Id.* at ECF 102 Tr., Nov. 14, 2023, 9:12-16. On November 15, 2023, the Court entered an order approving the Stipulation. *Id.* at ECF 94.

On November 29, 2023, Ms. Kirklin initiated the instant adversary proceeding ("Adversary Proceeding") by filing a complaint ("Complaint") against Debtor asserting that the Kirklin Debt is nondischargeable pursuant to § 523(a)(3)(A) ("Count I"), and that the Divorce Agreement Obligation is nondischargeable pursuant to § 523(a)(5) ("Count II"). Case No. 23-98 ECF 1. On January 2, 2024, Debtor filed a motion to dismiss ("Motion to Dismiss") seeking dismissal of the Complaint pursuant to Rule 12(b)(6), arguing, *inter alia*, that because Ms.

9

Kirklin currently has an allowed claim, § 523(a)(3)(A) is not applicable, and that none of the

Kirklin Debt constitutes a domestic support obligation, instead characterizing the Divorce

Agreement Obligation and any resultant debt as in the nature of equitable distribution

dischargeable in chapter 13 cases pursuant to § 523(a)(15). *Id.* at ECF 4 Mot. to Dismiss 1, 9-13.

The Motion to Dismiss attached the Divorce Agreement as Exhibit 1. *See id.* On January 23,

2024, Ms. Kirklin filed an objection to the Motion to Dismiss arguing that the plain language of

§ 523(a)(3) compels this Court to declare the Kirklin Debt nondischargeable since Ms. Kirklin

did not receive timely notice of the bankruptcy, and that an obligation arising from the sale of a

former marital residence can be a domestic support obligation pursuant to § 523(a)(5). *Id.* at ECF

8 Obj. 9-13, 15.

Subsequently, on March 5, 2024, Debtor filed an objection to POC 11 ("Claim

Objection") on the basis that the Kirklin Debt constitutes a non-priority claim for equitable

distribution rather than for a domestic support obligation. Case No. 22-12228 ECF 103 Obj. to

POC 11 at 2.

On August 26, 2024, the Court held a hearing on the Motion to Dismiss and the Claim

Objection ("August Hearing"). *Id.* at ECF 126. At the August Hearing, Debtor explained that

because he had used more money from the HELOC against the Property, the Divorce Agreement

Obligation was intended to reimburse Ms. Kirklin for the additional amount that he drew against

the HELOC. Tr. 59:20-60:7, 61:5-18. Ms. Kirklin testified, however, that "the [Divorce

Agreement Obligation] was for living expenses like day to day" explaining that her

understanding was based on what her divorce attorney had told her and that at the time of the

divorce "we were still living in the same house in the kids' school district and it was an

expensive place to run or live in." *Id.* at 109:11-15, 110:9-112:9, 125:17-22. At the August

Hearing, counsel for the parties accepted the Court's suggestion that they attempt settlement discussions. *Id.* at 24:5-18, 27:12-28:15. When it became apparent that the parties could not reach a consensual resolution, the Court took these matters under advisement.

## III.    DISCUSSION

In objecting to POC 11 and moving to dismiss Ms. Kirklin's cause of action under §523(a)(5), the Debtor argues that the Divorce Agreement Obligation and related Attorney Fee Award cannot be classified as domestic support obligations because the parties did not intend for the Divorce Agreement Obligation to support Ms. Kirklin, instead intending that it merely reimburse her for funds Debtor used from the HELOC during their marriage. Ms. Kirklin insists that she believed the Divorce Agreement Obligation was meant to assist her with her living expenses.

With respect to the omission of Ms. Kirklin from the schedules, Debtor argues that because the Stipulation deems her claim timely, § 523(a)(3) cannot serve as a basis for finding the Kirklin Debt nondischargeable. Ms. Kirklin disagrees given that she did not receive notice of the bankruptcy in time to file her claim by the Proof of Claim Bar Date.

Based on the evidence presented at the August Hearing, the Court finds upon consideration of the language of the Divorce Agreement, the financial circumstances of the parties at the time they executed the Divorce Agreement, and the function of the Divorce Agreement Obligation that the parties intended the Divorce Agreement Obligation to serve as equitable distribution. The Court therefore concludes that the Kirklin Debt does not qualify as a priority claim under § 507(a)(1) and that § 523(a)(5) cannot support a finding of nondischargeability. Furthermore, the Court concludes that because the Court approved the parties' joint request to consider Ms. Kirklin's claim timely, meaning Debtor will need to include

11

her claim in a modified plan, § 523(a)(3) cannot support a finding of nondischargeability for the Kirklin Debt.

### A.  Applicable Legal Principles – Claim Objection

First addressing the Claim Objection, § 507(a) of the Bankruptcy Code "sets forth ten categories of expenses and claims that are entitled to priority payment in a bankruptcy case." *In re Anthony,* 453 B.R. 782, 785 (Bankr. D. N.J. 2011). *See* 11 U.S.C. § 507(a). Pursuant to §507(a)(1)(A), "[a]llowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor…" have first priority. The Bankruptcy Code defines "domestic support obligation" as:

> a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law…that is – (A) owed to or recoverable by – (i) a spouse, former spouse, or child of the debtor…or (ii) a governmental unit; (B) in the nature of alimony, maintenance, or support…of such spouse, former spouse, or child of the debtor…without regard to whether such debt is expressly so designated; (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of - (i) a separation agreement, divorce decree, or property settlement agreement; (ii) an order of a court of record; or (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor…for the purpose of collecting the debt.

11 U.S.C. § 101(14A)(A)–(D).

In sum, to qualify as a domestic support obligation, the debt must be (i) "owed to or recoverable by" a governmental unit or a person with a specific relationship to the debtor such as a spouse, former spouse, or child of the debtor; (ii) the underlying obligation must be in the nature of alimony, maintenance, or support of such person; (iii) the obligation must arise from an

agreement or court order; and (iv) the debt must not be assigned to a non-governmental entity

unless voluntarily done by the spouse, former spouse, or child of the debtor. *See* 11 U.S.C.

§101(14A)(A)–(D); *In re Price*, 545 B.R. 114, 118 (Bankr. W.D. Pa. 2015).

### B.  Status of the Divorce Agreement Obligation

Turning to the first aspect of the Kirklin Debt, the Divorce Agreement Obligation, the

parties do not dispute that the Divorce Agreement Obligation is owed to a former spouse, arose

from an agreement, and has not been assigned, leaving the Court only to consider whether it is in

the nature of alimony, maintenance, or support.

Obligations in the nature of "alimony, maintenance, or support" generally are owed to the

dependent spouse to provide continuing financial support enabling the dependent spouse to meet

his or her basic needs and/or maintain his or her pre-separation standard of living. *See e.g.*,

*Tyndall v. Tyndall (In re Tyndall)*, 360 B.R. 68, 71–72 (Bankr. D. Del. 2007) (debtor's obligation

to make regular payments to his former spouse in lieu of her interest in debtor's business was

contemplated to allow former spouse to meet necessary living expenses and was found to serve a

support function); *Marker v. Marker (In re Marker)*, 139 B.R. 615, 622–23 (Bankr. W.D. Pa.

1992) (finding debtor's obligation to pay former spouse her share of debtor's business in one

lump sum by a certain date constituted support and maintenance under federal law because

circumstances reflected it was intended to enable debtor's former spouse to obtain life's daily

necessities and maintain the marital residence); *Pollock v. Pollock (In re Pollock)*, 150 B.R. 584,

589 (Bankr. M.D. Pa. 1992) (debtor's assumption of obligation to pay second mortgage on

marital residence was considered support because it was intended to facilitate maintenance of

dependent former spouse's housing); *Smith v. Smith*, 904 A.2d 15, 20 (Pa. Super. Ct. 2006) ("the

purpose of alimony is to ensure that the reasonable needs of the person who is unable to support

himself or herself…are met. Alimony is based upon reasonable needs in accordance with the

lifestyle and standard of living established by the parties during the marriage…") (citations

omitted).

In contrast, property settlements stemming from the division of marital assets in divorce

proceedings without regard for either spouse's need for financial support constitute obligations in

the nature of equitable distribution. *See e.g.*, *Shirey v. Shirey*, No. 97-CV-7818, 1998 WL

107031, at *4–5 (E.D. Pa. Mar. 11, 1998) (finding debtor's obligation to compensate his former

spouse for rental value of jointly-owned property where debtor resided post-separation without

paying mortgage to be in the nature of equitable distribution due to the state court's lack of

consideration for any financial need of the former spouse in imposing the obligation); *Mannix v.*

*Mannix (In re Mannix)*, 303 B.R. 587, 594–95 (Bankr. M.D. Pa. 2003) (debtor's obligation to

reimburse his former spouse for a loan used to pay creditors of debtor's business did not

constitute alimony, maintenance, or support as demonstrated by the lack of evidence that the

former spouse would be unable to meet her needs in the absence of debtor's reimbursement for

the loan); *Rankin v. Alloway (In re Alloway)*, 37 B.R. 420, 426 (Bankr. E.D. Pa. 1984)

("unless…the debt is more akin to alimony, maintenance, or support rather than a mere

distribution of property, the debt will be discharged."). Importantly, a debt could still be "in the

nature of support" for purposes of the Bankruptcy Code even though it would not legally qualify

as alimony or support under state law. *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759,

762 (3d Cir. 1990).

"[W]hether an obligation is in the nature of alimony, maintenance or support, as

distinguished from a property settlement, depends on…the intent of the parties at the time of the

settlement agreement." *Id.* Ultimately, courts must look beyond the label attached to an

obligation to examine its true nature. *Id.* Under appropriate circumstances, an obligation can be

in the nature of support despite the label provided to it in an agreement or divorce decree. *In re*

*Froncillo*, 296 B.R. 138, 143-44 (Bankr. W.D. Pa. 2003). The Third Circuit Court of Appeals

("Third Circuit") directs courts to examine the parties' intent using three principal indicators: (i)

the language and substance of the agreement; (ii) the parties' financial circumstances at the time

of the settlement; and (iii) the function of the obligation. *In re Gianakis,* 917 F.2d at 762-63.

Specifically, the Third Circuit explained:

> [f]irst, the court must examine the language and substance of the
> agreement in the context of surrounding circumstances, using extrinsic
> evidence if necessary. However, it is likely that 'neither the parties nor the
> divorce court contemplated the effect of a subsequent bankruptcy when
> the obligation arose.' Therefore, the parties and the state courts may not
> have focused on whether a particular obligation was to serve as support or
> as a property settlement unrelated to support. As the Pennsylvania
> Superior Court noted, even an obligation designated as a property
> settlement may be related to support because state courts often will adjust
> alimony awards depending on the nature and amount of marital assets
> available for distribution. In fact, 'property division often achieves the
> same goal as alimony, i.e., support.'
>
> Because the language of the agreement alone may not provide a
> sufficiently conclusive answer as to the nature of an obligation, the second
> indicator to which we must look to assist in ascertaining the parties' intent
> is the parties' financial circumstances at the time of the settlement. The
> facts that one spouse had custody of minor children, was not employed, or
> was employed in a less remunerative position than the other spouse are
> aspects of the parties' financial circumstances at the time the obligation
> was fixed which shed light on the inquiry into the nature of the obligation
> as support.
>
> Third, the court should examine the function served by the obligation at
> the time of the divorce or settlement. An obligation that serves to maintain
> daily necessities such as food, housing and transportation is indicative of a
> debt intended to be in the nature of support.

*In re Gianakas*, 917 F.2d at 762–63 (citations omitted).

Accordingly, the Court will review the language and substance of the Divorce Agreement; the parties' financial circumstances at the time that the Divorce Agreement was executed; and the function of the Divorce Agreement Obligation. First, the language and substance of the Divorce Agreement strongly support the Debtor's position regarding the nature of the Divorce Agreement Obligation. Pursuant to the plain language of the Divorce Agreement, the $50,000 alimony payment was to constitute Ms. Kirklin's only claim against Debtor for alimony, maintenance, or support, and in fact, the Divorce Agreement plainly precluded her from making any future claim against Debtor for alimony, maintenance, or support. No language in the Divorce Agreement itself even remotely suggests that the parties intended the Divorce Agreement Obligation to support Ms. Kirklin as opposed to simply reimbursing her for funds which Debtor had used from the HELOC. In fact, the Divorce Agreement explicitly states the parties' intent that the Divorce Agreement Obligation "is meant to reimburse [Ms. Kirklin] for funds that were paid from the home equity line of credit associated with the former marital home." Hrg. Ex. D-2 at 6. As such, the language and substance of the Divorce Agreement, while not determinative, do weigh heavily in favor of Debtor.

In considering the parties' financial circumstances at the time the parties executed the Divorce Agreement, Ms. Kirklin clearly received less compensation from her employment and business in 2018 than did Debtor. That said, although Ms. Kirklin did have her two children to support and was employed in a less remunerative position than Debtor, she also had a steady income of at least $5,800/month in child support from her first ex-husband, had a nursing degree, and owned her own business at the time of the Divorce Agreement, thus leaving her with meaningful income-producing potential for supporting herself and her children. In fact, the

16

Divorce Agreement tasked her with paying numerous obligations associated with the Property until she moved out and until its sale.

Finally, the Divorce Agreement Obligation seemed to function more as a property settlement than as support. As the Third Circuit stated in *Gianakas,* "an obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support." *In re Gianakas*, 917 F.2d at 763. Other factors also shed light on the intended function of an obligation stemming from a divorce. For instance, that an obligation is payable in installments rather than a lump sum generally signals that the obligation functions to provide support. *See Gianakas v. Gianakas (In re Gianakas)*, 112 B.R. 737, 742 (W.D. Pa. 1990). Similarly, courts tend to find obligations which terminate upon a condition or the death or remarriage of the recipient spouse as in the nature of support. *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984); *In re Gianakas*, 112 B.R. at 742. Conversely, courts tend to view obligations which remain consistent regardless of changes in the recipient spouse's circumstances as true property settlements. *Shaver,* 736 F.2d at 1316. In determining the intended function of an obligation, some courts have also considered whether "the debt was allocated in lieu of a greater allowance of alimony" and "whether the support award would be inadequate absent the assumption" of a debt like a mortgage. *In re Alloway,* 37 B.R. at 425.

The Court has no basis to conclude that the alimony awarded in the Divorce Agreement would have been insufficient when combined with her other income to meet Ms. Kirklin's necessities. Ms. Kirklin's conclusory testimony that she understood the Divorce Agreement Obligation as contributing to her living expenses lacked any specificity regarding what expenses she needed the Divorce Agreement Obligation to meet. At bottom, it appears that this Divorce Agreement Obligation primarily served to reimburse Ms. Kirklin for funds which had been

17

expended through the HELOC during the parties' marriage, rather than to support Ms. Kirklin, particularly considering that Ms. Kirklin owned her own business, had at least one additional source of income from child support paid by her ex-husband, had a nursing degree, and was entitled to receive two other large lump sum payments from Debtor – the alimony payment and the QDRO payment. As such, it appears that this Divorce Agreement Obligation was intended to divide marital property in a manner consistent with traditional principles of equitable distribution.

Based on the foregoing, the Court concludes that the Divorce Agreement Obligation constitutes a property settlement in the nature of equitable distribution. As such, the Attorney Fee Award and interest accrued on the Kirklin Judgment in connection with proceedings to enforce the Divorce Agreement Obligation also do not qualify as domestic support obligations. Counsel for Ms. Kirklin now concedes that the Bad Faith Fee Award in favor of Ms. Kirklin attributable to expenses incurred defending against the Malicious Prosecution Action does not constitute a domestic support obligation despite initially characterizing Ms. Kirklin's entire claim as a priority claim in POC 11. Tr. 118:17-18. Therefore, the Court will sustain the Claim Objection in its entirety and the Kirklin Debt is reclassified as a general unsecured claim.

### C. Exceptions to Dischargeability Under § 523(a)

Turning to the Adversary Proceeding, upon completion of all plan payments, a chapter 13 debtor is entitled to discharge all debts except those set out in § 1328(a), such as any debt of the kind specified in § 523(a)(3), (5). *See* 11 U.S.C. § 1328(a)(2)[2]. Section 523(a)(5) provides that

---

[2] Pursuant to § 1328(a)(2):

> Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of certification (including amounts due before the petition was filed, but only to the extent provided for by the

any debt for a domestic support obligation is not dischargeable. Although domestic support

obligations pursuant to § 523(a)(5) are excepted from chapter 13 discharge, debts for divorce-

related property settlements are dischargeable under chapter 13. *See* 11 U.S.C. § 1328(a)(2); *In

re Redfearn*, 608 B.R. 556, 560 (Bankr. D.N.M. 2019) (while property settlement obligations are

nondischargeable under § 523(a)(15) in chapter 7 cases, they are dischargeable in chapter 13

cases). Because the Court has already determined in connection with the Claim Objection that

the Kirklin Debt does not constitute a domestic support obligation, the Court grants the Motion

to Dismiss Count II.

Under § 523(a)(3)(A), an individual debtor is not discharged from any debt "neither listed

nor scheduled under section 521(a)(1) of this title [11 USCS § 521(a)(1)], with the name, if

known to the debtor, of the creditor to whom such debt is owed, in time to permit – (A) if such

debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a

proof of claim, unless such creditor had notice or actual knowledge of the case in time for such

timely filing…" Thus, § 523(a)(3)(A) excepts unscheduled debts from discharge in a case in

which a distribution is made to creditors where the creditor, due to the absence of notice or actual

knowledge of the bankruptcy filing, was unable to file a timely proof of claim. *Bosman v. Glod

(In re Glod)*, 528 B.R. 517, 531-32 (Bankr. N.D. N.Y. 2015). That said, "[n]o where in section

523(a)(3) is the *reason* why a debt was omitted from the bankruptcy schedules made relevant to

the discharge of that debt." *Judd v. Wolfe (In re Judd)*, 78 F.3d 110, 116 (3d Cir. 1996)

(emphasis in original).

---

plan) have been paid, unless the court approves a written waiver of discharge executed by the
debtor after the order for relief under this chapter [11 USCS §§ 1301 et seq.], the court shall grant
the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this
title [11 USCS § 502], except any debt – …(2) of the kind specified in…paragraph…(3)…(5)…of
section 523(a)…

As established in connection with the Claim Objection, the Debtor concedes that through Attorney Frigo's error and his own failure to sufficiently review the schedules and statement of financial affairs prior to their filing, he did not include Ms. Kirklin nor the Kirklin Debt in his schedules or statement of financial affairs, and Ms. Kirklin did not receive notice or have knowledge of the commencement of the bankruptcy case until after the Proof of Claim Bar Date. Ordinarily, that would conclude the inquiry. However, by entering an order approving the Stipulation upon joint request of the parties, which deemed POC 11 timely filed, the Court effectively extended the time for Ms. Kirklin to file her proof of claim and partake in any distribution from the Plan. In fact, Debtor readily concedes that Ms. Kirklin's claim "is an allowed claim which must be addressed in the Debtor's chapter 13 plan pursuant to a Motion to Modify [sic]" and that "[Ms. Kirklin] will have the opportunity to object to the Debtor's amended plan as the Debtor will have to file a motion pursuant to 11 U.S.C. § 1329(a)(1), to file an amended plan post-confirmation, as all allowed claims must be addressed in the Debtor's chapter 13 plan, and Kirklin's claim is 'allowed…'" Case No. 22-12228 ECF 127 Br. 3, 6. Ultimately, the Stipulation renders her proof of claim timely and § 523(a)(3)(A) inapplicable.[3] *See also In re Crum*, 48 B.R. 486, 491 (Bankr. N.D. Ill. 1985) ("this Court is compelled to find that Section 523(a)(3) specifically designates only two creditor's rights which are of such paramount importance that their loss mandates exception of a late scheduled debt from discharge. Those two rights are the right under Section 523(a)(3)(A) to timely file a proof of claim so as to allow participation if a dividend is issued (*In re Stark*); and the right under Section

---

[3] Additionally, pursuant to Federal Rule of Bankruptcy Procedure 3002(c) ("Rule 3002"), in a chapter 13 case, "the proof of claim is timely if filed within 70 days after the order for relief…" However, certain exceptions to that apply "in all cases[,]" including under Rule 3002(c)(7), which provides "[o]n a creditor's motion filed before or after the time to file a proof of claim has expired, the court may extend the time to file by no more than 60 days from the date of its order." While not technically a motion, the Stipulation amounts to a creditor's request to extend the time to file the proof of claim, which the Court granted, arguably rendering POC 11 timely by virtue of Rule 3002(c)(7).

523(a)(3)(B) to obtain a determination of dischargeability under Section 523(a)(2), (4), and

(6).”). Based on these circumstances, the Motion to Dismiss shall be GRANTED for Count I.

**IV.     CONCLUSION**

Based on the foregoing, the Claim Objection is SUSTAINED and Ms. Kirklin's claim is

reclassified as a general unsecured claim. Additionally, the Motion to Dismiss is GRANTED

with prejudice.

Date: September 19, 2025                    _____

                                                          Honorable Ashely M. Chan
                                                          United States Bankruptcy Judge